NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO P.C.,
X.C., and L.C.

No. 1 CA-JV 25-0207

FILED 07-22-2026

Appeal from the Superior Court in Navajo County
No. S0900SV202400006
The Honorable Michala M. Ruechel, Judge

**AFFIRMED**

COUNSEL

Matthew Lara, Mesa
*Counsel for Appellant Father*

Aspey, Watkins & Diesel, PLLC, Flagstaff
By Zachary J. Markham
*Counsel for Appellee Mother*

**MEMORANDUM DECISION**

Judge Andrew J. Becke delivered the decision of the Court, in which
Presiding Judge Samuel A. Thumma and Judge Kent E. Cattani joined.

**B E C K E**, Judge:

¶1        Father appeals the superior court's order terminating his parental rights to his children P.C., X.C., and L.C. For the reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Mother and Father were never married but lived together in Phoenix when the twins P.C. and X.C. were born in 2016. Shortly after, Mother and Father moved to Winslow with the children. Mother and Father had L.C. in early 2017. In May 2017, they ended their relationship and the three children remained with Mother in Winslow.

¶3        Mother petitioned for parenting time orders in 2019, and Father was allowed two supervised visits per week. After Father failed to fully exercise his time, Mother petitioned to amend his parenting time in 2020. The court ordered a progressive parenting plan, where Father would have one supervised visit per week and time would be added if he substantially exercised his time. Father failed to do so. He did not consistently show up, rescheduled often, poorly communicated, and went months without seeing the children.

¶4        In May 2022, Father took one of the children from Winslow to Phoenix in violation of the parenting time order. The same day Father took the child, Mother obtained an emergency order to have Father bring the child back to Mother. Father did not return the child until a few days later. A new parenting time order was entered, and Father was allowed one visit per week with an agreed-upon supervisor.

¶5        In June 2022, when the children were being picked up for their first visit with Father under the new parenting time order, Father did not bring an agreed-upon supervisor. This led to a non-physical altercation between Father and Mother's boyfriend. Father then obtained a protective order against Mother. This order prohibited Mother from contacting Father except through attorneys, legal processes, and court hearings. Father attempted to contact the children through Mother and third parties, but Mother did not respond given concerns about violating the order. Father's attempts to contact the children stopped in 2023.

¶6        In March 2024, Mother petitioned to terminate Father's parental rights to all three children, alleging abandonment. She alleged that Father had not paid child support since 2019 and had not seen the children for three or four years.

**¶7**         During a court-ordered interview for a social study with a court-appointed counselor, where Mother and the children were present in person, but Father attended virtually, Father admitted to being charged with domestic violence against Mother, but blamed "explosiveness" caused by his bipolar disorder. Only one child appeared to recognize Father during the interview. The court-appointed counselor noted Father's minimal relationship with the children and that Mother "provides a trusting and loving environment" for the children. Based on Father's lack of contact and support, as well as his history of domestic violence, the court-appointed counselor opined that it was in the children's best interests for Father's rights to be terminated.

**¶8**         A one-day trial was held in September 2025, where the court heard testimony from Mother, Father, and the court-appointed counselor. The social study was admitted into evidence.

**¶9**         The court found that Mother had proven by clear and convincing evidence that Father had abandoned the children under A.R.S. § 8-533(B)(1), based on Father's failure to see or contact the children since 2023, to fully exercise his court-ordered parenting time, to file anything with the court to exercise his parenting time, and to pay child support since 2019.

**¶10**         The court also found that Mother had proven by a preponderance of the evidence that termination was in the best interests of the children. It found that not terminating Father's rights would be detrimental to the children because they were currently stable and secure, Father had unresolved issues with "explosiveness," and Father failed to follow court orders.

**¶11**         Father timely appealed. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

**¶12**         Father argues that the superior court erred by: (1) finding that he abandoned the children; and (2) finding that termination was in the children's best interests.

**¶13**         When terminating parental rights, the superior court must find: (1) a statutory ground for termination under A.R.S. § 8-533(B) by clear and convincing evidence, and (2) that termination is in the children's best interests by a preponderance of the evidence. *Alma S. v. Dep't of Child Safety*,

245 Ariz. 146, 149–50, ¶ 8 (2018). We accept the superior court's factual findings if reasonable evidence and inferences support them. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478, ¶ 30 (2023) (quotations omitted). We affirm the court's legal conclusions unless clearly erroneous. *Id.* at 478–79, ¶ 31.

## I.     The Court Did Not Abuse Its Discretion in Finding that Father Abandoned the Children.

**¶14**        The superior court found Mother proved Father abandoned the children under A.R.S. § 8-533(B)(1). The statute defines abandonment as

> the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision. Abandonment includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child. Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment.

A.R.S. § 8-531(1). The party seeking termination has the burden of proving these elements. *In re B.W.*, 260 Ariz. 123, 130, ¶ 18 (2025). If a parent offers controverting evidence or shows just cause for failing to maintain a normal parental relationship with their children, abandonment will not be presumed. *Id.* at ¶ 19. Even when a parent cannot exercise traditional methods of bonding with his children, he must still "act persistently to establish the relationship however possible and must vigorously assert his legal rights to the extent necessary." *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶ 22 (2000) (quotation omitted).

**¶15**        Father argues that the court erred in not considering: (1) Mother's obstruction with his parenting efforts; and (2) Father's reasons for not maintaining contact with the children after 2023. He alleges that his depression, emotional trauma, bipolar disorder, PTSD, suspended drivers' license, lack of vehicle, and financial hardship hindered his ability to file a petition to enforce parenting time.

**¶16**        The superior court found that Father had abandoned his children due to his lack of contact with them. The record supports the court's conclusion that Mother presented prima facie evidence of abandonment. At trial, Mother testified that Father had not contacted the children since 2022, except for once in 2024 when Father saw the children virtually in order to complete the social study. Father did not send gifts,

letters, or financially support the children during that time, had not paid child support, and did not file a petition to enforce his parenting time.

¶17 Father did not show just cause for his abandonment of the children. Contrary to Father's assertion, the court did consider Mother's obstruction with his parenting time. Specifically, the court noted that "Mother did obstruct Father's attempts to see or speak to the children in 2022." However, Father then stopped attempting to contact the children at all.

¶18 Father testified that he had not filed any petitions with the court because he was discouraged by Mother's filings. But a parent "must vigorously assert his legal rights to the extent necessary," *Michael J.*, 196 Ariz. at 250, ¶ 22, and Father's choice to forego filing because he did not think he would prevail does not discharge that obligation, *id.* at 251, ¶ 25 ("The burden to act as a parent rests with the parent, who should assert his legal rights at the first and every opportunity."). Father's other reasons for not filing a petition similarly do not show just cause. Father did not persistently attempt to establish a parental relationship with the children. *Id.* at 250, ¶ 22. Although Father was dealing with personal issues, including not having a vehicle or license, the record allowed the court to conclude he failed to make even a minimal effort to maintain contact with his children. *Pima Cnty. Juv. Action No. S-114487*, 179 Ariz. 86, 97 (1994) ("[W]e judge abandonment by conduct, *not* by subjective intent.").

¶19 The superior court did not abuse its discretion in concluding that Father had abandoned his children under A.R.S. § 8-533(B)(1).

## II. The Court Did Not Abuse Its Discretion in Finding that Termination Was in the Children's Best Interests.

¶20 Father argues that the court improperly relied on the same facts supporting abandonment to support its findings that termination was in the children's best interests. He also contends that the evidence did not show that it would be detrimental to the children if his rights were not terminated.

¶21 When making a best interests inquiry, "the focus shifts to the interests of the child as distinct from those of the parent." *Alma S.*, 245 Ariz. at 150, ¶ 12. Termination is in the children's best interests if they will benefit from termination or will be harmed if termination is denied. *Id.* at ¶ 13.

¶22 Father provides no authority in support of his contention that the statutory ground and best interests findings require separate evidence.

Instead, we have held the opposite: "Courts should not ignore facts or evidence supporting best interests just because they also support abandonment—facts or evidence may support both." *In re M.L.*, 261 Ariz. 189, 197, ¶ 40 (App. 2025).

**¶23** The superior court found that not terminating Father's rights would be detrimental to the children because Father committed domestic violence against Mother, the children were doing very well in Mother's care, Father has failed to follow court orders, and "Father has not addressed his issues that cause him to be 'explosive.'"

**¶24** The court's findings are supported by the record. Father admitted that he has significant behavioral health issues, including "explosiveness" caused by bipolar disorder, but he is not being treated for those issues. The social study determined that "[t]he children are appropriately bonded with their mother, and she provides a trusting and loving environment for them." Mother said the children have been "doing really well," both in school and personally. Additionally, Father violated court orders by taking a child to Phoenix for several days without permission.

**¶25** Therefore, the superior court did not err in finding that termination would be in the best interests of the children.

## CONCLUSION

**¶26** For the foregoing reasons, we affirm. Mother seeks an award of attorneys' fees under ARCAP 21(a). Because she does not state a statutory basis, we deny her request. *See Roubos v. Miller*, 214 Ariz. 416, 420, ¶ 21 (2007) (noting that a party must state the statutory or contractual basis when requesting attorneys' fees). As the prevailing party, we award Mother her costs upon compliance with ARCAP 21.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED:** JR